UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY JOE HARO,<br><br>          Plaintiff,<br><br>v.<br><br>T. NGUYEN, *et al.*<br><br>          Defendants. | Case No. 1:22-cv-00448-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF Nos. 50, 51). |

      Plaintiff Johnny Joe Haro is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's Eighth Amendment claims against defendants Nguyen, Jeng, and Lai for deliberate indifference to his serious medical needs based on Plaintiff's allegations that Defendants purposefully failed to address his dental needs. (ECF No. 10).

      Defendant Dr. Kai-Chin Jeng filed a motion for summary judgment on October 2, 2023, arguing that Dr. Jeng met the applicable standard of care in all respects during the care and treatment rendered to Plaintiff. (ECF No. 50). Defendants Dr. Nguyen and Dr. Lai filed a motion for summary judgment on October 20, 2023, arguing that the undisputed facts show that Plaintiff was provided with medically appropriate treatment, and that Defendants are entitled to qualified

immunity. (ECF No. 51). Defendants supported their motions with Statements of Undisputed Facts, medical records, sworn declarations, and Plaintiff's deposition testimony.

Plaintiff filed a two-page opposition to both motions on November 2, 2023, arguing that a layman could have seen the necessity for a mouth guard and antibiotics, which he claimed were not given. (ECF No. 54). Plaintiff did not include any evidence in support of his opposition.

Defendants filed replies on November 15, 2023. (ECF Nos. 55, 56).

For the following reasons, the Court recommends granting both motions for summary judgment.

## I. PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint (ECF No. 9) alleges as follows:

Defendant Nguyen, a supervising dentist at Corcoran State Prison ("CSP"), interviewed Plaintiff regarding his 602. She also x-rayed Plaintiff's teeth and examined his teeth. She saw multiple teeth damaged due to bruxism. She ignored Plaintiff's request for a mouthguard and lied when she said there would be a follow-up.

Defendant Jeng, a P&S at CSP, and defendant Lai, a dentist at CSP, both reviewed Plaintiff's x-rays and determined that Plaintiff's "medical need" was within normal limits. Plaintiff respectfully disagrees.

A year later, Plaintiff still has not received a follow-up or treatment. Additionally, Plaintiff's request to receive his medical records has been ignored. This shows a cover-up and a pattern of deceit.

A headquarters level response dated June 16, 2021, stated that Plaintiff was assigned a dental priority classification code of 2 for his treatment needs, and that all dental treatment would be initiated and/or completed within 120 calendar days. 120 days passed and Plaintiff did not receive treatment.

Defendants caused serious damage to his teeth, as well as infections.

The "treatment" was so obvious that even a lay person would easily recognize the necessity for attention.

The Court screened Plaintiff's complaint and allowed the following claims to proceed: Plaintiff's Eighth Amendment claims against defendants Nguyen, Jeng, and Lai for deliberate indifference to his serious medical needs. (ECF No. 10).

## II.     DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT[1]

### A.     Dr. Jeng's Motion for Summary Judgment

Dr. Jeng's motion for summary judgment argues that the undisputed facts show that Dr. Jeng was not deliberately indifferent to Plaintiff's Constitutional rights. (ECF No. 50). Defendant Jeng includes a separate statement of undisputed facts, listing the following facts and evidence supporting Defendant Jeng's motion (ECF No. 50-3):

1. Mr. Haro, who was incarcerated at Corcoran State Prison as of May 23, 2023 and had been since October of 2018, has seen dentists at that facility "multiple times annually" and had regularly seen a dentist at least once a year since his initial incarceration. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(a); *see also* CDCR Records, Exhibit C, Bates p. 527–542 (DECL 0063–0078) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4; *see also* Exhibit D, Deposition of Johnny Joe Haro, p. 10, line 5 to p. 11, line 20 (DECL 0095–0096) as authenticated in the declaration of Kevin Thelen, ¶ 5.).

2. Mr. Haro has multiple documented instances in his CDCR records of refusing treatment or evaluation for various dental conditions or issues. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(b); *see also* CDCR records, Exhibit C, Bates p. 539–542 (DECL 0075–0078) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4; *see also* Exhibit D, Deposition of Johnny Joe Haro, p. 12, line 19 to p. 13, line 16 and p. 29, line 3 to p. 30, line 2 (DECL 0097–0098, 0102–0103) as authenticated in the declaration of Kevin Thelen, ¶ 5.)

3. Dr. Jeng saw the patient for conditions such as nasal congestion and right shoulder pain (an April 2, 2021 visit) and a right groin rash (a February 18, 2021 visit)

---

[1] Both motions for summary judgment included a warning to Plaintiff consistent with *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (*en banc*). (ECF Nos. 50-1; 51-7).

3

(Evidence: Declaration of Ryan Klein, M.D., ¶ 6(c); *see also* CDCR records, Exhibit C, Bates p. 13–137 (DECL 0041–0045) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

4. There is no documentation in plaintiff's patient visit note for the February 18, 2021 visit that plaintiff requested from Dr. Jeng either a nightguard or mouthguard secondary to concerns that he had about bruxism and no indication in plaintiff's patient visit note that was prepared by Dr. Jeng for that February 18, 2021 visit that Mr. Haro ever mentioned or discussed any dental problems or issues that plaintiff was experiencing with Dr. Jeng. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(d); *see also* CDCR records, Exhibit C, Bates p. 135–137 (DECL 0043–0045) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4; *see also* Exhibit D, Deposition of Johnny Joe Haro, p. 60, line 11 to p. 61, line 15 (DECL 0107–0108) as authenticated in the declaration of Kevin Thelen, ¶ 5.)

5. Dr. Jeng provided Mr. Haro with treatment for his rash complaints on February 18, 2021 by ordering Lotrisone topical ointment for him. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(d); *see also* CDCR records, Exhibit C, Bates p. 135–137 and 596 (DECL 0043–0045, 0080) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

6. When Dr. Jeng saw the patient on April 2, 2021 to evaluate his nasal congestion and right shoulder pain, Dr. Jeng ordered Triamcinolone nasal spray, a right shoulder x-ray, referred the patient to physical therapy, and provided Mr. Haro with a temporary accommodation of no heavy lifting. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(e); *see also* CDCR records, Exhibit C, Bates p. 13–135, 595, 626, and 812 (DECL 0041–0043, 0079, 0082) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

7. There is no documentation in plaintiff's patient visit note for the April 2, 2021 visit that plaintiff requested from Dr. Jeng either a nightguard or mouthguard secondary to concerns that he had about bruxism. (Evidence: Declaration of Ryan Klein, M.D.,

4

¶ 6(f); *see also* CDCR records, Exhibit C, Bates p. 13–135 (DECL 0041–0043) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4; *see also* Exhibit D, Deposition of Johnny Joe Haro, p. 61, line 24 to p. 62, line 17 (DECL 0108–0109) as authenticated in the declaration of Kevin Thelen, ¶ 5.)

8. There are no other documented patient notes between Dr. Jeng and Mr. Haro in the CDCR records other than the February 18, 2021 and April 2, 2021 visit notes. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(h); *see also* CDCR records, Exhibit C, Bates p. 13–137 (DECL 0041–0045) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

9. While Mr. Haro could not describe in his deposition what Dr. Jeng looked like, he recalled being seen by "older Asian gentlemen" at a "medical appointment relating to [his] shoulder," discussing getting a nightguard, and being told that a dentist needed to provide that at some point in the 2019–2021 time frame. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(g); *see also* Exhibit D, Deposition of Johnny Joe Haro, p. 59, lines 2–17 and p. 62, line 19 to p. 63, line 5 (DECL 0109–0110) as authenticated in the declaration of Kevin Thelen, ¶ 5.).

10. Mr. Haro was seen by dentists in March of 2021. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(i); *see also* CDCR records, Exhibit C, Bates p. 537–542 (DECL 0073–0078) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

11. Mr. Haro was seen by dentist Dr. Saranya Cherdsuriya on September 29, 2022, and Dr. Cherdsuriya recommended extraction of a number of teeth and further monitoring for the patient. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(k); *see also* CDCR records, Exhibit C, Bates p. 53–537 (DECL 0069–0073) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

12. Mr. Haro had tooth number 30 extracted by Dr. Cherdsuriya on October 5, 2022. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(k); *see also* CDCR records,

5

Exhibit C, Bates p. 530–533 (DECL 006–0069) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

13. On November 23, 2022, Mr. Haro was seen by dentist Dr. Mark Nash, and Mr. Haro refused his scheduling teeth cleaning. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(l); *see also* CDCR records, Exhibit C, Bates p. 529–530 (DECL 0065–0066) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

14. The last documented visit for Mr. Haro with a dentist was when the plaintiff saw Dr. Nash on January 17, 2023, and Mr. Haro was documented as refusing the scheduled treatment that day and denying having any toothaches or dental emergencies that day. (Evidence: Declaration of Ryan Klein, M.D., ¶ 6(m); *see also* CDCR records, Exhibit C, Bates pp. 527–28 (DECL 0063–0064) to the declaration of Ryan Klein, M.D., as authenticated in the declaration of Kevin Thelen, ¶ 4).

15. Dr. Ryan Klein is qualified to render an opinion as to the standard of care applicable to physicians such as Dr. Jeng and whether or not an internal medicine physician has been deliberately indifferent to a serious medical need for a patient. (Evidence: Declaration of Ryan Klein, M.D., ¶ 1–5; *see also* Exhibit A to Declaration of Ryan Klein, M.D., as authenticated in ¶ 1 of Dr. Klein's declaration.).

16. Dr. Jeng fully and completely met the applicable standard of care for a physician specializing in the field of Internal Medicine as it relates to the care and treatment he provided to Mr. Haro at all times. (Evidence: Declaration of Ryan Klein, M.D., ¶¶ 7, 8).

17. Dr. Jeng met the applicable standard of care in connection with his February 18, 2021 telemedicine visit with the plaintiff as he prescribed a reasonable medication to treat the patient's rash complaint. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(a)).

18. Dr. Jeng met the applicable standard of care in connection with his April 2, 2021 telemedicine visit with the plaintiff when he referred the patient to physical therapy, ordered an imaging study of the right shoulder, prescribed a reasonable medication

6

to treat his nasal congestion complaints, and issued an order for temporary accommodation for Mr. Haro of no heavy lifting in light of his reported right shoulder issues. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(b)).

19. If Mr. Haro were told by Dr. Jeng during either (or both) the February 18, 2021 and April 2, 2021 visit(s) that he would need to address his request or a mouthguard or nightguard with the prison dental providers, this would be wholly reasonable for someone who is a physician with a specialty of Internal Medicine like Dr. Jeng. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(c)).

20. The standard of care does not require that Dr. Jeng provide the patient with a mouthguard or nightguard, or that he address any of the patient's complaints about his dental needs or status as Internal Medicine physicians like Dr. Jeng do not have the same training, education, background, and/or experience as a dentist would to evaluate a patient's dental complaints, determine if a mouthguard/nightguard is indicated, assess or treat potential damage to a patient's teeth, and/or determine what may be the etiology or cause of a patient's specific dental issues. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(c)).

21. If Dr. Jeng did tell Mr. Haro on either February 18, 2021 or April 2, 2021 to speak with dental providers if he felt that he needed a mouthguard or nightguard, that is not a situation where Dr. Jeng has somehow refused to provide care for the patient but rather is a recognition by Dr. Jeng that he, as an Internal Medicine physician, is not the correct specialist to address these complaints and requests. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(d)).

22. Dr. Jeng adequately and correctly evaluated Mr. Haro's complaints on February 18 and April 2 of 2021, and his treatment options on each of those dates were reasonable and met the standard of care. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(e)).

23. The course of treatment provided by Dr. Jeng to Mr. Haro during the February 18, 2021 and April 2, 2021 visits was medically acceptable under the circumstances, and there is no indication or reason to suspect that the course of treatment chosen by

Dr. Jeng was done so in conscious disregard of an excessive risk to plaintiff's health. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(e)).

24. Dr. Jeng is not required under the standard of care applicable to Internal Medicine physicians to provide care that goes beyond the scope of his expertise, including a request for treatment of dental issues and/or requests for dental care made to an Internal Medicine physician. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(f)).

25. Dr. Jeng provided appropriate care to Mr. Haro at all times, and at no point did Dr. Jeng unreasonably fail to provide care to Mr. Haro for his presenting patient complaints on February 18, 2021 and April 2, 2021. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(i)).

26. Dr. Jeng never disregarded Mr. Haro's serious medical needs by failing to take reasonable measures to address such needs as referring Mr. Haro to the correctional facility dentists to address dental needs and concerns was wholly reasonable. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(i)).

27. Dr. Ryan Klein is qualified to render an opinion as to medical causation issues in this case. (Evidence: Declaration of Ryan Klein, M.D., ¶ 1–5; *see also* Exhibit A to Declaration of Ryan Klein, M.D., as authenticated in ¶ 1 of Dr. Klein's declaration.).

28. There is nothing that Dr. Jeng did or did not do during his February 18, 2021 and April 2, 2021 visits with plaintiff Johnny Joe Haro that was a substantial factor in causing harm to the patient. (Evidence: Declaration of Ryan Klein, M.D., ¶ 7(h))

**B.     Defendants Lai and Nguyen's Motion for Summary Judgment**

Drs. Lai and Nguyen's motion for summary judgment argues that the undisputed facts show that they were not deliberately indifferent to Plaintiff's Constitutional rights and that they are entitled to qualified immunity. (ECF No. 51). Defendants Lai and Nguyen include a separate statement of undisputed facts (ECF No. 51-6), listing the following facts and evidence supporting their motion:

1. Plaintiff is an inmate in the custody of California Department of Corrections and Rehabilitation (CDCR). Plaintiff was incarcerated in Corcoran State Prison from

October 2018 to May 2023. (Decl. Iranmanesh, Exhibit P Plaintiff's Deposition 10:5–11).

2. Defendant Dr. Nguyen is a dentist employed by CDCR at Kern Valley State Prison. Dr. Nguyen worked at Corcoran State Prison. (Decl. Nguyen, ¶ 4).

3. Defendant, Dr. Lai is a dentist employed by CDCR. Dr. Lai worked at Corcoran State Prison. (Decl. Nguyen, ¶ 3).

4. On November 20, 2015, Haro was examined by Dr. Green, Dr, Green diagnosed Haro with mild periondist [sic][2] and recommended the affected teeth be extracted. (Dec. Milnes ¶ 7, Ex. A (AGO 1–5)).

5. On February 9, 2016, Haro was seen for a triage appointment. Haro refused treatment for the abscesses. (Dec. Milnes ¶ 8, Ex. B (AGO 6)).

6. On February 19, 2016, a PANO of Haro's teeth was taken. The PANO revealed multiple abscesses. (Dec. Milnes ¶ 8).

7. On February 29, 2016 he refused treatment (second refusal) for the abscesses as well as "all remaining dental work." (Dec. Milnes ¶ 9, Ex. C (AGO 7–9)).

8. On June 14, 2016, Haro was seen for a triage appointment at his request secondary to trauma. Haro refused treatment (third refusal) for tooth number 9 and was provided antibiotic medication to control infection. (Dec. Milnes ¶ 10, Ex D (AGO 10–11)).

9. On July 15, 2016 Haro was seen for a triage appointment at his request seeking care for tooth number 9 (Dec. Milnes ¶ 11, Ex. E (AGO 12)).

10. On December 17, 2016, Haro was seen for a prophylaxis (cleaning) appointment and refused treatment (fourth refusal), including all remaining dental treatment. (Dec. Milnes ¶ 12, Ex. F (AGO 13–14)).

11. On October 18, 2017, Haro was seen for a triage appointment at his request seeking care for "two infected lower teeth." Haro refused treatment (fifth refusal) for teeth #19 and 23. (Dec. Milnes ¶ 13, Ex. G (AGO 14–16)).

---

[2] While Defendants' SUF (ECF No. 51-6) uses the word "periondist," which appears to be a misspelling, Dr. Milnes' declaration (ECF No. 51-4 at 3) that SUF cites uses the term "periodontitis."

9

12. On July 5, 2018, Haro was seen for a triage appointment at his request with a chief concern of "toothache." Tooth #19 was diagnosed with a periapical radiolucency and chronic apical periodontitis, and was treatment planned for extraction. (Dec. Milnes ¶ 14, Ex. H (AGO 17–23)).

13. On October 2, 2018, Haro was seen for a comprehensive exam appointment at his request and refused treatment (6th refusal). (Dec. Milnes ¶ 15, Ex. I (AGO 24–25)).

14. Haro did not seek any further dental treatment until March 11, 2021. (Dec. Milnes ¶ 16).

15. On March 11, 2021, Haro was interviewed by Dr. Nguyen for a health care grievance. (Dec. Milnes ¶ 17, Ex. J (AGO 26–30); Decl. Nguyen ¶ 7, Ex P (AGO 47–48); Decl. Iranmanesh, Exhibit Q Deposition (Pl.'s Depo.) 25:4–25.).

16. On March 17, 2021, Dr. Nguyen reviewed a PANO of Haro's teeth. (Decl. Nguyen ¶ 7, Ex. J (AGO 26, 30).).

17. On March 18, 2021, Haro sent a 7362 request for medical documents. On March 22, 2021, Dr. Lai sent Haro a letter informing Haro to contact medical records. (Decl. Nguyen, Ex. O (AGO 45–47)).

18. On September 29, 2022, Haro was seen for a comprehensive dental examination and treatment plan. During the examination, it was noted that he had generalized moderate and localized severe periodontitis. Haro refused treatment on teeth #14 and 15. (Dec. Milnes ¶ 18, Ex. K (AGO 3–35)).

19. On October 5, 2022, Haro was seen for a planned treatment appointment for tooth number 30 which had been diagnosed with a periodontal abscess, and was treatment planned for extraction. The extraction was completed without complications. (Dec. Milnes ¶ 19, Ex. L (AGO 36–38)).

20. On November 11, 2022, Haro was seen for scaling and root planning to treat periodontitis. Haro refused treatment for his periodontitis. (Dec. Milnes ¶ 20, Ex. M (AGO 39–41)).

21. On January 17, 2023 Haro was seen for a triage appointment as a result of his previous refusals to see if he would like to continue with treatment. Haro refused all

dental treatment. (Dec. Milnes ¶ 21, Ex. N (AGO 42–43), Decl. Iranmanesh, Exhibit Q Deposition (Pl.'s Depo.) 35:3–9).

22. No Dentist told Haro that the damage to his teeth was caused by bruxism. No dentist has ever told Haro he is suffering from bruxism. (Decl. Iranmanesh, Exhibit Q Deposition (Pl.'s Depo.) 31:4-11, 45–46).

23. Haro testified that he is claiming damages for six teeth. (Decl. Iranmanesh, Exhibit Q Deposition (Pl.'s Depo.) 31:4–11).

24. Haro testified that he was informed he must first have his teeth extracted before he can receive a night guard. Haro did not agree to having his teeth extracted. (Decl. Iranmanesh, Exhibit Q Deposition (Pl.'s Depo.) 29:2–17).

### C. Plaintiff's Opposition to Summary Judgment

Plaintiff filed a response on November 2, 2023. (ECF No. 54). Plaintiff did not include any evidence in support of his opposition or any response to Defendants' statements of undisputed facts.

Plaintiff's opposition argues that Defendants' focus on the treatments that Plaintiff refused. However, these treatments had nothing to do with simply providing antibiotics for infected teeth and providing a mouth guard to prevent damage caused by bruxism. Defendants' evidence regarding root canals, cleanings, and extractions are irrelevant to the matter. If Defendants would have prescribed antibiotics and a mouth guard, multiple teeth could have been saved and pain could have been minimized. Even a layman could have seen the necessity for both prescriptions.

As for Dr. Jeng, Plaintiff requested a mouth guard due to bruxism on two dates; this request was ignored by Dr. Jeng on the ground that it was a dental issue. But Dr. Jeng has the authority to prescribe a mouth guard or could have communicated with a dentist due to Plaintiff's serious medical need.

All defendants ignored Plaintiff's request resulting in infections to multiple teeth and damages due to bruxism.

\\\
\\\

11

### III. ANALYSIS

#### A. Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24; *see also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) ("[S]ummary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial.").

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010); *Celotex Corp.*, 477 U.S. at 323–24 (the moving party need not produce evidence which negates the opponent's claim). *See also* Fed. R. Civ. P. 56(c)(1) (a party asserting that a fact cannot be disputed, or is disputed, must support the assertion by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

If the moving party meets its burden with a properly supported motion, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324). At that point, the non-moving party's burden "is not a light one." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the non-moving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). While "[t]he evidence of the non-movant is to be believed," *Anderson*, 477 U.S. at 255, the Court need only draw inferences where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn," *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). The Court need not entertain inferences that are supported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Legal Standards for Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate

indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

### C. Analysis of Evidence Presented

The Court finds that Defendants have met their initial burden of presenting evidence that demonstrate the absence of a genuine issue of material fact. They have presented evidence in the form of declarations under penalty of perjury, Plaintiff's deposition testimony, and expert opinion that Defendants were not deliberately indifferent to a serious medical need. This evidence shows that Defendants provided Plaintiff with medically appropriate treatment for his dental condition, never did a purposeful act or failed to respond to a prisoner's pain or possible medical need, and did not cause harm caused by not providing the care that Plaintiff requested. Defendant Jeng has also provided evidence that he lacked the expertise to provide further dental care, and that it was not deliberately indifferent to refer Plaintiff to dental professionals for that care.

In response, Plaintiff has not come forth with evidence from which a jury could reasonably render a verdict in his favor. He failed to present any evidence, or respond to Defendants' statement of evidence. Although Plaintiff claims that a mouth guard should have

been provided, this at most indicates a difference of opinion as to his medical care. Additionally, while he asserts that they should have provided antibiotics, he does not specifically refute the evidence presented by Defendants that antibiotics were provided on multiple occasions. Nor does he provide evidence of a specific time that he required antibiotics but that Defendants failed to provide them. Moreover, while Plaintiff argues that providing various forms of treatment other than a mouth guard and antibiotics were not relevant, Defendants' unrefuted evidence shows they attempted to treat Plaintiff's dental conditions and did not act with deliberate indifference.

Defendants are thus entitled to summary judgment.

### IV.   CONCLUSION AND RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED** that:

1. Defendants' Motions for summary judgment (ECF Nos. 50, 51) be **GRANTED**.
2. This case be closed.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 26, 2024**                         /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE